AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address.)*<br><br>a black iPhone seized from Joshua Vandervoort's place of employment on or about March 2, 2021, which is currently being stored at the FBI Office in Rochester, NY, as further described in Attachment A | Case No.  21-MJ- 4028 |

## APPLICATION FOR A SEARCH WARRANT

I, Barry W. Couch, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of New York *(identify the person or describe property to be searched and give its location)*:  a black iPhone seized from Joshua Vandervoort's place of employment on or about March 2, 2021, which is currently being stored at the FBI Office in Rochester, NY, as further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:   See Attachment B, Items to be Searched for and Seized, all of which are evidence, contraband, fruits, and instrumentalities of violations of Title 18 United States Code, Sections 2251(a) and 2252A(a)(5)(B), and all of which are more fully described in the application and affidavit filed in support of this warrant, the allegations of which are adopted and incorporated by reference as if fully set forth herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

      X   evidence of a crime;
      X   contraband, fruits of crime, or other items illegally possessed;
      X   property designed for use, intended for use, or used in committing a crime;
     _____ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of  18  U.S.C. §§ 2251(a) and 2252A(a)(5)(B), and the application is based on these facts which are continued on the attached sheet.

     ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Barry W. Couch, Special Agent, FBI
*Printed name and title*

Application submitted electronically by email/.pdf and attested to me and before me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3).

Date:   March 8, 2021

_____
*Judge's signature*

City and state:     Rochester, New York

Hon. Marian W. Payson, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF NEW YORK   )
COUNTY OF MONROE   )   SS:
CITY OF ROCHESTER   )

I, BARRY W. COUCH, being duly sworn, depose and state:

1.      I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI).   I have been a Special Agent for approximately twelve years.   I am currently assigned to the Buffalo Division, Rochester, New York, Resident Agency.   My duties involve investigating federal crimes including violations of Title 18, United States Code, Sections 2251 and 2252A.

2.      The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers, and the review of documents and records.

3.      This affidavit is made in support of an application for a warrant to search the contents of a black iPhone belonging to JOSHUA VANDERVOOT, as further described in Attachment A (hereinafter the "SUBJECT PHONE").

4.      As set forth in more detail below, I respectfully submit that there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2251(a) (Production of Child Pornography) and Title 18, United States Code, Section 2252A(a)(5)(B) (Possession of Child Pornography) (hereinafter, collectively the "TARGET OFFENSES") are located within the SUBJECT PHONE.

5.     Because this affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every detail of the investigation. Rather, I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of the TARGET OFFENSES are presently located in the SUBJECT PHONE.

6.     Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part.

## BACKGROUND OF INVESTIGATION

*Initial Complaint involving Joshua Vandervoort*

7.     On or about February 17, 2021, I received a report from the Webster Police Department in Webster, New York, indicating that an adult female (Cooperating Witness #1) (CW1) had been communicating online with an adult male who claimed to have had physical sexual contact with a six year old female and produced child pornography involving that child.

8.     Specifically, on or about January 7, 2021, CW1 reported to Webster Police that the previous evening she began conversing with someone named "Josh" online.   Josh claimed he is fond of young girls and has been sexually abusing a six-year-old girl for a couple years.   CW1 said she met Josh on a certain website.   After connecting on the website, CW1 and Josh began conversing *via* email. Josh's email account was jjvroc07@yahoo.com. Josh told CW1 that his residential address was 131 English Road 14616.

2

9.    Through records checks, Webster Police determined a Joshua Vandervoort, dob xx/xx/1982, resides at 131 English Road Rochester, New York 14616.

*CW1 Meets Vandervoort and Observes Child Pornography on the Subject Phone*

10.    On or about January 9, 2021, CW1 advised Webster Police that on her own accord she was going to meet up with Josh in person. CW1 said that Josh was going to show CW1 sexually explicit pictures of the six-year-old girl he had told CW1 about. CW1 told Webster Police her objective was to help identify Josh and catch him. Webster Police advised CW1 against meeting with Josh but CW1 was adamant about meeting with him. CW1 did meet that day with Josh in a business parking lot in Webster. Webster Police were able to observe Josh's vehicle parked next to CW1's vehicle as Josh and CW1 met. Josh's vehicle was a 2015 black Jeep Cherokee with New York license plate JJP7737 and was registered to Joshua Vandervoort.

11.    After meeting with Josh, CW1 contacted Webster Police and advised that Josh showed her several pictures of a young female child on Josh's cell phone (the "SUBJECT PHONE") when they met in the parking lot, including pictures of what appeared to be the child's vagina. CW1 communicated to Webster Police she would be able to identify Josh. CW1 was shown a six-pack photo array and she did identify Joshua Vandervoort as the individual that had met with her and showed her the pictures of the child.

12.    On or about February 11, 2021, Webster Police spoke again with CW1 for further clarification of the events surrounding Joshua Vandervoort. CW1 said she was initially told by a friend to check out the website CW1 met Josh on because it was really entertaining and there were "very freaky" people on it. CW1 said she was bored one weekend and she

3

went onto the website to check it out. CW1 connected with someone using the nickname "KinkyDaddy" (who later became known to CW1 as "Josh" through their communications). KinkyDaddy told CW1 that he liked young girls aged 6 to 18. CW1 said she was "trolling" KinkyDaddy and played along as if she was sexually interested in girls aged 6 to 18 as well, even though in reality she is not. CW1 and KinkyDaddy would talk sexually through the website and she learned that KinkyDaddy was sexually aroused by people dressing up as young girls.

13.     KinkyDaddy also told CW1 he is actively sexually abusing the daughter of one of his friends. When CW1 asked KinkyDaddy if he was afraid of getting into trouble or getting caught, he told her that he was not afraid because he had been abusing the child since she was three years old. KinkyDaddy told CW1 that he babysits the child at his house at 131 English Road and that the sexual abuse is happening in his bedroom. KinkyDaddy said he calls the child up to his bedroom, where he starts kissing her. KinkyDaddy said the child helps him "jerk off," that he "jerks off" on the child's "pussy" and face, and that he has "eaten (name he calls child) pussy."

14.     On one occasion, KinkyDaddy requested CW1 come over to his house "to help spread (name he calls child)" so that KinkyDaddy could have sex with the child without hurting her.

15.     CW1 said she believed there was a possibility that Josh's claims of child abuse are just his fantasy, but that CW1 had asked Josh whether it was his fantasy and Josh had said no, that the sexual abuse is actually occurring. Josh claimed that the child lives with her family about ten minutes away from Josh's house.

4

16.     CW1 informed Webster Police that Josh had let CW1 take pictures with her cell phone of the photos of the child he displayed to CW1 on his cell phone when they had met in the parking lot. CW1 provided those pictures to Webster Police. I have reviewed these pictures and they show someone holding a cell phone.   The cell phone screen shows photos of an approximately six-year-old girl.   These photos are not child pornography.   The cell phone screen also shows photos of what appear to be of a prepubescent girl's vagina. Based upon my training and experience in the investigation of child pornography cases, I believe that these pictures constitute child pornography, as defined by Title 18, United States Code, Section 2256(8).

17.     CW1 also provided Webster Police printouts of some of her email communications with Josh.  I have observed these printouts and they corroborate CW1's reporting to the Webster Police, as described above.

18.     In the email communications, Josh sent CW1 a picture of himself. I located a Facebook page for "Josh Vandervoort," which appears to be the Facebook page of the Joshua Vandervoort of 131 English Road based off of pictures posted on that Facebook page which appear to be the same Joshua Vandervoort known to reside at the 131 English Road residence. A picture of Joshua Vandervoort that was used as the Facebook page's profile picture in 2016 appears to be the same picture Josh emailed CW1 of himself.

19.     I also located a Pinterest.com account online for a Josh Vandervoort whose profile picture appears to be the same picture as one posted on the Josh Vandervoort Facebook page referred to above. The user name of this Pinterest.com account is "@jjvroc07".

20.     On February 23, 2021, I conducted physical surveillance at 131 English Road and observed a black Jeep SUV vehicle with New York license plate JJP7737 parked in the driveway. The vehicle and license plate match the description of the vehicle that Josh drove to meet CW1, as described in Paragraph 10, above.

21.     According to New York State Department of Motor Vehicles, this vehicle is registered to Joshua Vandervoort at 131 English Road Rochester, New York 14616.

22.     The individual depicted in the photograph on file with the New York State Department of Motor Vehicles for Joshua Vandervoort appears to be same individual depicted in (a) the photo CW1 identified as Josh from the six-pack identification procedure and (b) the photo Josh emailed CW1 of himself.

*Interview of Vandervoort and Execution of Federal Search Warrants for the Person*

23.     On or about February 26, 2021, I obtained federal search warrants in the Western District of New York authorizing a search of the person of Joshua Vandervoort and the residence of 131 English Road Rochester, New York 14616, for evidence of the production and possession of child pornography, including evidence found on digital devices.

24.     On or about March 2, 2021, Task Force Officer Carlton Turner and I interviewed Joshua Vandervoort at his place of employment in Penfield, New York.

25.     Vandervoort acknowledged communicating with and meeting CW1 in the parking lot in Webster.

26.     He said the pictures he showed CW1 in the parking lot that displayed a young female's face and were not pornography, were of the daughter of a friend of his that he knows. When asked, he provided the name of that friend.

27.     Vandervoort said the pictures he showed CW1 in the parking lot that displayed what appeared to me to be of a prepubescent girl's vagina were of his adult girlfriend.

28.     Vandervoort acknowledged telling CW1 that he had a sexual interest in a six-year-old child. Vandervoort said he would be willing to get some counseling regarding his sexual desires. Vandervoort indicated his communications with CW1 regarding sexual activity with the daughter of his friend were just fantasy and did not actually take place.

29.     Vandervoort said that the phone he had used to show pictures to CW1 (*i.e.*, the SUBJECT PHONE) was at his 131 English Road residence. Vandervoort was informed of the search warrant for his residence and agreed to meet me and the other search team members at his residence so he could show us where the SUBJECT PHONE was located.

30.     Prior to leaving Vandervoort's office location, the search warrant was executed on Vandervoort's person and the SUBJECT PHONE was not located on Vandervoort. Vandervoort was provided a copy of that search warrant for his person.

*Execution of Federal Search Warrant at 131 English Road and
Discovery of Computer Containing Child Pornography*

31.     A short time later, the search team members and I arrived at 131 English Road, as did Vandervoort. We executed the search warrant at the residence and Vandervoort communicated the SUBJECT PHONE was in his bedroom. Vandervoort led us up the stairs

to the second floor where he unlocked the door to his bedroom with a key. Vandervoort proceeded to look in two different drawers of a dresser and file cabinet but could not locate the SUBJECT PHONE. Vandervoort expressed confusion as to why the SUBJECT PHONE was not where he thought it was in his bedroom. At that point, Vandervoort exited his bedroom and went downstairs to his living room while the search of the residence continued.

32.     There was one computer located in Vandervoort's bedroom that was in a powered-on state. When asked, Vandervoort provided the password to access his computer. I then accessed the computer using the password provided by Vandervoort and located two images depicting girls approximately twelve to fourteen years old exposing their vaginas in the Trash section of the computer. Based on my training and experience, I believe that these two images constitute child pornography, as defined by Title 18, United States Code, Section 2256.  Those two images were the only files in the Trash section.

33.     When shown the images and questioned about them, Vandervoort expressed confusion as to how those images could be there and asked if their origin "could be tracked."

34.     At that point, I questioned Vandervoort again on where the SUBJECT PHONE could be and told him that I would hate to have to notify his employer about what was going on and ask permission to search his office for the SUBJECT PHONE. Vandervoort again expressed that he thought the SUBJECT PHONE should have been in his bedroom.

35.     Several minutes later, Vandervoort told me that if we did not locate the SUBJECT PHONE in his residence, that he would be willing to go back to his office and make sure the SUBJECT PHONE was not there. It appeared to me and the other search team

members that Vandervoort was possibly being evasive about knowledge of the location of the SUBJECT PHONE.

*Return to Vandervoort's Office and Discovery of SUBJECT PHONE*

36.     Shortly thereafter, TFO Turner and TFO Chris Toscano drove back to Vandervoort's office in Penfield and Vandervoort met them there.

37.     When they went back into the office with Vandervoort, Vandervoort, TFO Toscano and TFO Turner walked over to Vandervoort's desk and TFO Toscano observed a cell phone laying on the desk underneath the copy of the search warrant for the person of Vandervoort.

38.     When asked, Vandervoort confirmed it was the phone they were looking for. Based on my training and experience, I believe that it is likely that Vandervoort intentionally placed the search warrant paperwork on top of the SUBJECT PHONE when TFO Turner and I were initially interviewing him in his office in an effort to conceal it.

39.     TFO Turner and TFO Toscano seized the SUBJECT PHONE and drove back to the 131 English Road residence. Vandervoort drove back to the residence as well. TFO Toscano gave the SUBJECT PHONE to me.

40.     I asked Vandervoort if he was willing to open the SUBJECT PHONE and show me the images of a female vagina that he had previously shown to CW1. Vandervoort agreed, entered the passcode into the SUBJECT PHONE, and opened it. Vandervoort then clicked on the Photos section of the phone and scrolled through numerous images until he located an image of a female vagina.   Vandervoort identified this as one of the images he previously

showed to CW1. I observed the image and it appeared to be the same as one of the images I previously reviewed and described in Paragraph 16, above.

41.     The image was located in a series of photos depicting an adult woman in sexually explicit positions.   The image appeared to me as it did before to be an image of a prepubescent girl's vagina.   Based on my training and experience, this image constitutes child pornography, as defined by Title 18, United States Code, Section 2256.   Vandervoort then handed the SUBJECT PHONE back to me.

42.     When asked, Vandervoort said he was willing for me to scroll through the images. I did so for a very short period of time. In doing so, I observed two images showing the face of a girl that appeared to be the same girl in the pictures Vandervoort had shown CW1. When asked, Vandervoort confirmed they were of the same girl. I then placed the SUBJECT PHONE into airplane mode and locked the phone, in anticipation of applying for a search warrant to search its contents.

43.     When asked, Vandervoort declined to sign a consent form to allow the FBI to search the contents of the SUBJECT PHONE.   I transported the SUBJECT PHONE directly to the FBI Office in Rochester where it is still currently located. The SUBJECT PHONE's contents have not been searched other than in the limited scope described above with Vandervoort's consent.

*Interview of Minor's Mother*

44.     On the evening of March 2, 2021, I was able to speak with the woman identified by Vandervoort as being the mother of the child he told CW1 he had had physical sexual

contact with. I showed the mother the pictures of the child's face that Vandervoort had shown to CW1 in the Webster parking lot. The mother confirmed the pictures were of her seven-year-old daughter. The mother confirmed that Vandervoort had not seen the child in approximately one year, but that he had seen the child extensively when the child was two to five years old, and had spent time alone with the child on multiple occasions.

45.     Your affiant believes there is probable cause to search the contents of the SUBJECT PHONE for evidence of child pornography activity due to Vandervoort indicating to CW1 that the close up pictures of the vagina he showed her on the SUBJECT PHONE were of the child he knows, that Vandervoort showed me one of those pictures on the SUBJECT PHONE itself, that even though Vandervoort claimed the close up picture of the vagina he showed me on the SUBJECT PHONE was of his adult girlfriend it still appears to me to possibly be of a prepubescent aged child's vagina, that I located images of child pornography on Vandervoort's computer and it is known to law enforcement to be common practice for those engaging in child pornography activity to move files of child pornography from one digital device to another, and that it appeared to me and the other search team members that Vandervoort was possibly being evasive about his knowledge of the location of the SUBJECT PHONE.

### TRAINING AND EXPERIENCE

46.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the production, distribution and possession of child pornography:

11

a.   Those who produce, distribute, and/or possess child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.   Those who produce, distribute, and/or possess child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videos, books, slides and/or drawings or other visual media.   Such individuals often use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual act.

c.   Those who produce, distribute, and/or possess child pornography often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videos, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.   These individuals sometimes retain pictures, films, videos, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, and child erotica for many years.

d.   Likewise, those who produce, distribute, and/or possess child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer, cell phone, or other digital device, and surrounding area.   These collections are often maintained for several years and are kept close by, to enable the collector to view the collection, which is valued highly.   In many cases, the individual may store the collection and use a laptop computer, a hard drive, a cellular telephone, or other digital storage device, that can easily be transported from one location to another, such as in a vehicle, in order to keep his collection private and be able to view the collection at various locations as desired.

e.   Those who produce, distribute, and/or possess child pornography also may correspond with and/or meet others to share information and materials; often maintain correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of individuals with whom they have been in contact and who share the same interests in child pornography.

f.   Those who produce, distribute, and/or possess child pornography prefer not to be without their child pornography for any prolonged time period.   This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.   Files of child pornography stored on digital devices, such as thumb drives, can sometimes be viewed by law enforcement even after having been deleted.

h.   Files of child pornography stored on digital devices are often copied onto other digital storage media, such as thumb drives, computers, or external hard drives, by those engaged with the child pornography activity.

## CONCLUSION

47.   Based upon the forgoing, the undersigned respectfully submits that there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of the TARGET OFFENSES, as specifically described in Attachment B to this application, are presently located within the SUBJECT PHONE.

48.   The undersigned therefore respectfully requests that the attached warrant be issued authorizing a search of the SUBJECT PHONE for the items listed in Attachment B.

BARRY W. COUCH
Special Agent
Federal Bureau of Investigation

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this  8th  day of March, 2021.

HON. MARIAN W. PAYSON
United States Magistrate Judge

13

**ATTACHMENT A**

DESCRIPTION OF PROPERTY TO BE SEARCHED

An iPhone, black in color, seized from Joshua Vandervoort's place of employment on or about March 2, 2021, which is currently being stored at the FBI Office in Rochester, NY, and pictured here (the "SUBJECT PHONE"):





14

## **ATTACHMENT B**

ITEMS TO BE SEARCHED FOR AND SEIZED

1.      Images of child pornography and files containing images of child pornography in any form;

2.      Information, correspondence, communications, and other materials constituting evidence of, or pertaining to, the sexual exploitation of minors;

3.      Any and all records, documents, e-mails, telephone numbers, text messages, correspondence, communications, images, internet search history, or other information, which evince a sexual interest in minors or child exploitation;

4.      Records and information relating to the existence of internet sites related to child pornography or a sexual interest in children;

5.      Records or other items related to the use of internet accounts, to include usernames, passwords, financial accounts, social media accounts, location information, IP address information, etc., which evinces the identity of the individual who uses or owns the SUBJECT PHONE.